IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-224-FL

| | |
|---|---|
| EPIC GAMES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| SHENZHEN TAIRUO TECHNOLOGY ) | |
| CO., LTD, d/b/a NREAL f/k/a Hangzhou ) | |
| Tairuo Technology Co., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). (DE 8). The issues raised have been briefed fully and, in this posture, are ripe for ruling. For the following reasons, defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action on May 14, 2021, asserting federal and state claims of trademark infringement, unfair competition, and refusal of registration with respect to defendant's use of allegedly infringing marks in association with "mixed reality glasses," including "nreal," "Nreal," "nreal light," and "Nreal Light," as well as the following mark as depicted in the complaint:

nreal

(Compl. ¶ 40) (hereinafter, the "Nreal Mark," and collectively, the "Nreal Marks"). Plaintiff seeks a permanent injunction, damages, attorneys' fees, and costs.

Defendant filed the instant motion to dismiss for lack of personal jurisdiction, with reliance upon sworn testimony of its founder and chief executive officer, Chi Xu. Plaintiff's response in opposition rests upon sworn testimony of employees, counsel of record, and an analyst who downloaded software from defendant's website. The court has stayed scheduling activities pending decision on the motion to dismiss.

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows. Plaintiff is a software company with a principal place of business in Cary, North Carolina. (Compl. ¶¶ 1, 10). Plaintiff owns 12 trademark registrations for UNREAL, UNREAL ENGINE, and other UNREAL-formative marks (collectively, the "Unreal Marks") in connection with a growing collection of goods and services including video games and the Unreal Engine. (Id. ¶¶ 35, 37). The Unreal Engine is a software suite available to third parties to develop augmented reality, virtual reality, and mixed reality content across a broad range of industries including gaming. (Id. ¶¶ 2, 18, 32).

Defendant is a Chinese corporation with a principal place of business in Beijing, China. (Id. ¶ 11). In January 2018, defendant filed with the U.S. Patent and Trademark Office application number 87,755,578 to register the Nreal Mark on an intent-to-use basis. (Id. ¶ 59). Within its application, defendant identified numerous goods and services including:

> "Downloadable software for tablet computers for organizing, editing, modifying, transmitting, storing and sharing data and information; . . . [v]irtual reality headsets; Smartglasses; 3D spectacles; . . . Software for processing images, graphics and text; Computer software for the databasing, visualization, manipulation, visual reality immersion and integration of geographic information with on-line member communities; Eyeglasses; . . . Design and development of computer game software and virtual reality software[.]"

(Id. ¶ 60). In December 2018, plaintiff opposed defendant's application, asserting a likelihood of confusion between the Nreal Mark and Unreal Marks given the similar sounding name and

2

appearance as well as their provision of comparable goods and services. (Id. ¶¶ 53, 54, 61). After filing its opposition, plaintiff and defendant engaged in settlement negotiations without success. (Id. ¶ 62).

In August 2020, plaintiff began selling Nreal Light glasses in Korea. (Id.). As signaled in defendant's trademark application, the Nreal Light glasses project three-dimensional images to show the user a mixed view of both virtual content and the user's actual surroundings. (Id. ¶ 42). Press releases provide that the glasses can be used with augmented reality, mixed reality, and virtual reality games as well as to watch videos. (Id. ¶ 43). After launching in Korea, defendant began selling Nreal Light glasses in Japan and Germany and announced plans to launch in the United States in the second quarter of 2021. (Id. ¶ 62).

As of the filing of plaintiff's complaint, defendant had not officially launched Nreal Light glasses in the United States. (Id.). However, plaintiff alleges defendant has begun conducting business across the United States by marketing Nreal Light glasses online, providing downloads of defendant's software developer kit for the Nreal Light glasses, accepting pre-order sales of development kits comprised of the Nreal Light glasses and related hardware, and launching an augmented reality game called Nreal Tower as well as the Nebula application, by which users can turn any existing Android application into a mixed reality application for use with the Nreal Light glasses. (Id. ¶¶ 13, 49).

## COURT'S DISCUSSION

A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima

3

facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).[1] At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993) ("[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

  B. Analysis

As explained in Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192 (4th Cir. 2018):

> To demonstrate personal jurisdiction over a defendant consistent with the Due Process Clause, a plaintiff must show (1) a State's *general* jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with the State; (2) a State's *specific* jurisdiction over the defendant by demonstrating that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts; or (3) Rule 4(k)(2) jurisdiction by demonstrating that no State can exercise personal jurisdiction over the defendant and that the defendant has sufficient contacts with the United States such that exercising jurisdiction over the defendant would be consistent with the U.S. Constitution and laws.

Id. at 198 (emphasis in original). Here, as in Sneha, plaintiff does not purport to demonstrate North Carolina's general jurisdiction over defendant but asserts it has demonstrated either specific jurisdiction or Rule 4(k)(2) jurisdiction. See id.[2] The court addresses each in turn.

  1. Specific Jurisdiction

---

[1] Internal citations and quotation marks are omitted from all citations unless otherwise specified.
[2] Plaintiff additionally asserts defendant's motion is untimely and that defendant's communications with the clerk's office regarding the answer deadline, which resulted in it being extended by 30 days, were deceitful. Where defendant filed the motion only one day after the original 60-day deadline, and where plaintiff does not seek particular relief as a result of the delay or communications made, the court considers the motion in this instance timely filed.

4

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). Where "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry" of whether personal jurisdiction comports with due process. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

"For a [s]tate to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014). "To decide whether specific jurisdiction exists, we examine (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the [s]tate; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). With regard to the first prong, the touchstone of the purposeful availment inquiry is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Here, plaintiff asserts several bases for personal jurisdiction, including 1) that defendant knew plaintiff's alleged harm would be felt in North Carolina; 2) the parties' settlement negotiations; 3) defendant's online presence; and 4) an end user license agreement.

5

Considering first plaintiff's assertion that defendant knew plaintiff's alleged harm would be felt in North Carolina, it is well-established in this circuit that "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld." Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 401 (4th Cir. 2003). Thus, plaintiff must additionally allege contacts by defendant to show that it "purposefully availed itself of the privilege of conducting activities in [North Carolina]." Mitrano, 377 F.3d at 407.

Turning, then, to the parties' settlement negotiations, plaintiff alleges that from January 2019 to May 2021, following its filing of opposition to defendant's trademark application, plaintiff's Raleigh-based counsel exchanged at least 90 emails and over 11 phone calls with defendant's counsel:

> To contact [plaintiff's counsel,] Mr. Thomas, Nreal's counsel must have seen his firm biography page, which shows he is located and practices in North Carolina. Mr. Thomas's North Carolina address was also shown in his email signature and on the TTAB docket and pleadings. Additionally, in exchanging draft agreements, Nreal's counsel sent to Mr. Thomas a draft in which Nreal's counsel had added Epic's North Carolina address.

(Pl. Resp. (DE 21) at 12).[3]

Although the United States Court of Appeals for the Fourth Circuit has not directly addressed the issue, other jurisdictions have held that settlement negotiations and accompanying correspondence do not suffice to create sufficient contact for the exercise of specific jurisdiction. See Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc., 148 F.3d 1355, 1360-1361 (Fed. Cir. 1998) (likening an offer for a license within a cease and desist letter to offer of settlement, and

---

[3] Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

6

holding that "[g]rounding personal jurisdiction on such contacts alone would not comport with principles of fairness"); Digi–Tel Holdings, Inc. v. Proteq Telecommunications, Ltd., 89 F.3d 519, 524-525 (8th Cir.1996) ("[C]ourts have hesitated to use unsuccessful settlement discussions as 'contacts' for jurisdictional purposes"). As "[g]iving jurisdictional significance to such activities may work against public policy by hindering the settlement of claims," and pursuant to the third prong of the specific jurisdiction inquiry, the court declines to so consider them. Digi–Tel Holdings, Inc., 89 F.3d at 525; see Williams v. First Nat. Bank, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."); Fed. R. Evid. 408 (manifesting a policy favoring settlements by providing that evidence of "promising to accept . . . a valuable consideration in . . . attempting to compromise a claim" is not admissible "to prove liability" for the claim, nor is "evidence of conduct or statements made in compromise negotiations").

As to defendant's online presence, plaintiff asserts that defendant utilized its social media accounts as well as solicited press to announce upcoming appearances at United States conferences and to provide information to United States consumers about its intended launch of Nreal Light glasses. The evidence plaintiff produces, however, shows defendant targeting the United States generally rather than North Carolina specifically. For instance, plaintiff relies on a screenshot of defendant's post announcing its launch in the United States is "around the corner":

7



(Torres Decl. (DE 23) at 149).

Indeed, while the posts and articles mention other cities and states, they are devoid of any reference to North Carolina. For instance, plaintiff includes screenshots of the following social media exchange between defendant and a customer from Seattle, Washington:





(Id. 144-46; see also id. at 214 (social media post announcing "Nreal in the USA?!? An Nreal Enterprise Edition? Wow! Tell me more!!!"); id. at 13, 21 (articles announcing that defendant's developer kits are available for pre-order in the United States generally); id. at 220 (same as to the consumer edition); id. at 64, 87, 97, 121 (articles describing defendant's participation in shows and conferences in the United States, none of which were held in North Carolina)).

Where the Fourth Circuit has noted that business activities focusing "generally on customers located throughout the United States . . . without focusing on and targeting [the] forum state cannot yield personal jurisdiction," and where it has emphasized the "[i]mportance . . . of evidence that defendant expressly aimed or directed its conduct toward forum state," these social media posts and articles alone are insufficient to establish a prima facie showing of purposeful availment by defendant. Carefirst of Maryland, Inc., 334 F.3d at 398.

Plaintiff additionally asserts that defendant's website is "highly interactive." (Pl. Resp. (DE 21) at 23). "The interactivity of a website is a jurisdictionally relevant fact." Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 141 (4th Cir. 2020). In that regard, the Fourth Circuit has

adopted the approach set out in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), wherein the court concluded that:

> the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. at 1124.

Applied here, although plaintiff has shown that defendant does business over the internet by providing downloads of defendant's software developer kit and by making pre-order sales of hardware-based development kits, it has not shown that, in so doing, defendant has entered into long-term contracts "that involve the knowing and repeated transmission of computer files over the Internet." Id. Thus, defendant's website fits into Zippo's "middle ground" and additional analysis is required. See Fidrych, 952 F.3d at 142.

Based on the evidence plaintiff provides, the interactivity of defendant's website is relatively limited. It allows customers to make purchases, and thus presumably requires them to provide personal and financial information. There is no evidence, however, that any such purchase creates "a continuing, back-and-forth relationship between [defendant] and the website user." Id. Rather, on the facts alleged, the website appears "to facilitate the making of a one-off [purchases]."

11

Case 5:21-cv-00224-FL   Document 29   Filed 03/25/22   Page 11 of 18

Id. (providing that such a website is "in many ways the digital equivalent of a toll-free telephone number, providing a simple, cost-free way for customers to contact the company").

Further, though defendant's website is interactive, plaintiff does not provide evidence that defendant uses it to target North Carolina residents specifically. See id. ("[I]f we attach too much significance on the mere fact of interactivity, we risk losing sight of the key issue in a specific jurisdiction case – whether the defendant has purposefully directed [its] activities at residents of the forum." (emphasis in original)). Indeed, much like defendant's social media, its website has a decidedly national, if not global, character. See Carefirst of Maryland, Inc., 334 F.3d at 401 (finding the overall character of the website to be pertinent to the jurisdictional inquiry). For instance, the website provides that "[a]ll items are shipped worldwide:"



(Torres Decl. (DE 23) at 29). It also includes that United States generally as one of the myriad of places to which defendant ships its products:

**Buckle up. This time, it's gonna be quick.**

All orders will be shipped out within 24 hours, but the estimated shipment time may vary.

| | |
|---|---|
| USA | 2-3 days |
| Japan | 3-5 days |
| United Kingdom | 5 days |
| Germany | 5 days |
| France | 5 days |
| Canada | 5 days * |
| Spain | 5 days |
| Australia | 6-7 days |
| Netherlands | 5 days |
| Italy | 5 days |
| Sweden | 5 days |
| Switzerland | 5 days |
| Others | 7-10 days |

(Id. at 30); see also Fidrych, 952 F.3d at 143 ("The fact that Marriott's website uses drop-down menus that include South Carolina simply does nothing to strengthen the jurisdictionally relevant connections between Marriott and South Carolina."). Thus, on the facts alleged, defendant "could not [on the basis of its Internet activities] have reasonably anticipate[d] being haled into [a North Carolina] court." Young v. New Haven Advoc., 315 F.3d 256, 264 (4th Cir. 2002). Consequently, at least considered alone, the website fails to furnish a contact adequate to support the court's exercise of personal jurisdiction over defendant.[4]

Finally, the record shows that one of defendant's employees, a product manager, entered into an end user license agreement for use of plaintiff's Unreal Engine software. The employee entered into the agreement on August 28, 2018, four months before plaintiff filed its opposition to

---

[4] For the same reason, defendant's launch of the Nreal Tower game and Nebula application, both generally available for download in the United States and for which plaintiff has produced no evidence that defendants targeted North Carolina specifically, are also insufficient to support the court's exercise of personal jurisdiction.

13

defendant's trademark application, and prior to any other meaningful communication alleged between the parties. The agreement provides in relevant part:

> All use of the Epic Trademarks will inure to the sole benefit of Epic. You agree not to engage in any activity that could tarnish, dilute, or affect the validity or enforceability of the Epic Trademarks or cause consumer confusion or diminish any goodwill relating to any Epic Trademarks. . . .
>
> You agree that this Agreement will be deemed to have been made and executed in the State of North Carolina, U.S.A., and any dispute will be resolved in accordance with the laws of North Carolina, excluding that body of law related to choice of laws, and of the United States of America. Any action or proceeding brought to enforce the terms of this Agreement or to adjudicate any dispute must be brought in the Superior Court of Wake County, State of North Carolina or the United States District Court for the Eastern District of North Carolina. You agree to the exclusive jurisdiction and venue of these courts. You waive any claim of inconvenient forum and any right to a jury trial.

(Whitting Decl. (DE 22) at 15, 18). Plaintiff thus asserts that the instant case is governed by the agreement's choice of law and forum clause.

Because none of plaintiff's claims are made on the basis of that agreement, or even make reference to it, they do not "arise out of [it]." Mitrano, 377 F.3d at 407; see Consulting Engineers Corp., 561 F.3d at 278-79 ("The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit."). The agreement is thus not relevant to the court's specific jurisdiction inquiry. See Fidrych, 952 F.3d at 139.[5]

Even if it were relevant, however, considered together with other factors, it would be insufficient to establish defendant "purposefully availed itself of the privilege of conducting activities in the [North Carolina]." Mitrano, 377 F.3d at 407. "The inclusion of a choice of law

---

[5] Also relevant to this inquiry is the fact that, even assuming the employee's conduct is attributable to defendant for the purposes of personal jurisdiction, which this court does not decide, as defendant is a corporation located outside of the United States, the agreement is not with plaintiff Epic Games, Inc. but rather is with "Epic Games International S.à r.l., acting through its Swiss branch." (Whitting Decl. (DE 22) at 7).

14

clause is one factor that a court may take into account in determining whether the exercise of personal jurisdiction is justified, but it is no more than that." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 281 (4th Cir. 2009); see Burger King Corp., 471 U.S. at 482 ("[S]uch a [choice of law] provision standing alone would be insufficient to confer jurisdiction."). "[A] valid forum selection clause, [however,] unlike a choice of law clause, may act as a waiver to objections to personal jurisdiction." Consulting Engineers Corp., 561 F.3d at 281 n.11 (emphasis added).

Applied here, the user agreement amounts to an isolated agreement made by one employee whom plaintiff has not alleged had any substantial decision-making authority to enter into agreements on behalf of defendant. Plaintiff has produced no evidence that the parties engaged in any negotiations in relation to the agreement and in fact, on the facts alleged, the agreement was entered into before there was any communication between the parties. Given that plaintiff has also not produced evidence that defendant is registered to do business in North Carolina, nor that it has visited, or maintains offices, facilities, bank accounts, phone numbers, or other addresses of any kind in the state, the court cannot find based on the agreement that defendant purposely availed itself. See Sneha Media & Ent., LLC, 911 F.3d at 198 (providing that all are relevant factors).[6] Further, and with regard to the third prong, the fact that defendant is a Chinese corporation also weighs against finding personal jurisdiction under these circumstances. See Asahi Metal Ind. Co. v. Superior Court, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

---

[6] Plaintiff alleges that plaintiff and defendant have had several in-person meetings, however it does not allege that any occurred in North Carolina.

15

Thus, while North Carolina does have a strong interest in adjudicating disputes involving the alleged infringement of trademarks owners by resident corporations, considering the combination of factors bearing upon personal jurisdiction, defendant's alleged contacts are insufficient to establish a prima facie showing of personal jurisdiction.

Plaintiff's reliance on the effects test in arguing to the contrary is unavailing. First, "[t]he effects test does not supplant the minimum contacts analysis, but rather informs it." Consulting Engineers Corp., 561 F.3d at 280. Second, "part of the effects test requires the plaintiff to establish that the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Id. (emphasis in original). Here, for the reasons aforementioned, plaintiff has failed to establish that the focal point of the alleged tortious activity was North Carolina. Thus, under the effects test as well, plaintiff fails to make a prima facie showing of this court's specific jurisdiction over defendant.

In sum, on the facts alleged, the court lacks specific jurisdiction over defendant.[7]

2.  Rule 4(k)(2) Jurisdiction

Plaintiff asserts in its response that even if North Carolina's long-arm statute fails to authorize this court's exercise of personal jurisdiction over defendant, the court may exercise jurisdiction under Rule 4(k)(2).

Rule 4(k)(2) provides that "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising

---

[7] Having resolved the instant motion in favor of defendant, the court does not reach defendant's additional argument that the majority of the conduct alleged is attributable to other Nreal entities and cannot be imputed to it.

Additionally, where plaintiff has failed to establish a prima facie showing of personal jurisdiction, the court declines its request for jurisdictional discovery. See Pandit v. Pandit, 808 F. App'x 179, 183 (4th Cir. 2020) ("Jurisdictional discovery is proper when the plaintiff has alleged sufficient facts to suggest the possible existence of personal jurisdiction.").

16

Case 5:21-cv-00224-FL   Document 29   Filed 03/25/22   Page 16 of 18

jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). "Thus, if a plaintiff's claims arise under federal law, the plaintiff can invoke Rule 4(k)(2) if it demonstrates that no State can exercise personal jurisdiction over the defendant but that the defendant's contacts with the United States as a whole support the exercise of jurisdiction consistent with the Constitution and laws of the United States." Grayson v. Anderson, 816 F.3d 262, 271 (4th Cir. 2016) (emphasis in original).

Applied here, "plaintiff[] never argued, as [it was] required to do, that no State could exercise personal jurisdiction over [defendant]." Id. (emphasis in original). Instead, plaintiff asserts that defendant failed to show that it was subject to jurisdiction in any state and proceeded to consider only whether California would be an appropriate forum.[8] Thus, plaintiff fails to invoke Rule 4(k)(2) jurisdiction.

In sum, on the facts alleged the court lacks personal and Rule 4(k)(2) jurisdiction over defendant. Where jurisdiction is lacking, Title 28 U.S.C. § 1406(a) gives the court discretion to either transfer the civil action if it is in the interests of justice or to dismiss it without prejudice. See Porter v. Groat, 840 F.2d 255, 258 (4th Cir. 1988). Here, defendant argues that, to the extent there is an appropriate venue for this dispute in the United States, it is in the Northern District of California. Plaintiff, however, asserts that such transfer would be burdensome and unjustified as no party is domiciled there and no material witnesses reside there. Thus, rather than transferring the case, the court in its discretion dismisses it without prejudice and allows plaintiff a time certain to file a motion for leave to amend its complaint or, in the alternative, to transfer the case to a proper venue.

---

[8] Plaintiff cites to this court's opinion in Krausz Indus. Ltd. v. Smith-Blair, Inc., 188 F. Supp. 3d 545, 551 (E.D.N.C. 2016) for the assertion that defendant bears the burden. That case, however, applied Federal Circuit law. Id. at 551.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 8) is GRANTED. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff is allowed **21 days** from the date of this order to file either a motion for leave to amend its complaint or a motion to transfer the case to an appropriate forum. In the event plaintiff does not file such motion within this time period, the clerk is DIRECTED, without further order of the court, to enter judgment for defendant on the basis of this order and close the case.

SO ORDERED, this the 25th day of March, 2022.

LOUISE W. FLANAGAN
United States District Judge